Argued and submitted March 2, affirmed November 12, 1987

## CONSOLIDATED SHELTER, INC. et al,
*Respondents,*

*v.*

## FAR WEST FEDERAL
## SAVINGS & LOAN ASSOCIATION,
*Appellant.*

(A8112-07504; CA A38563)

745 P2d 424

Henry L. Bauer, Portland, argued the cause for appellant.

With him on the briefs were Frank A. Vizzini and Bauer, Hermann, Fountain & Rhoades, Portland.

Glen McClendon, Portland, argued the cause for respondents. On the brief were Rick T. Hazelton and Lindsay, Hart, Neil & Weigler, Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

## NEWMAN, J.

Defendant appeals a judgment in plaintiffs'[1] action for breach of warranty and fraud. The jury returned a verdict for $806,000 for breach of warranty.[2] Defendant assigns as error that the court denied its motion at the close of the evidence for a directed verdict on the breach of warranty claim. We affirm.

From the evidence, the jury could have found these facts. In July 1979, Luton, sole shareholder of Shelter, purchased the Inn at Otter Crest from defendant. The property includes: (1) the "core facilities," including the restaurant, lounge and convention center; (2) the leased land on which condominium units are located; (3) 62 acres of adjacent undeveloped real property ("the acreage"); and (4) a sewage and water plant ("the plant"). In the sale agreement, defendant warranted that

> "the sewer [sic] and water plants shall have appropriate public agency approval and the capacity for 250 additional units to be developed on [the acreage], provided such development is commenced within eighteen (18) months from the date of this agreement."

The agreement also provided:

> "*Assignability.* It is understood by the parties hereto that Luton is going to assign some or all aspects of his investment in Otter Crest to various corporations or partnerships in which Luton will be an investor or partner. Far West [defendant] hereby consents for a period of eighteen (18) months from the date of sale to such transfer or transfers notwithstanding any provision in any document signed at closing which may prohibit such a transfer."

Luton assigned his rights to Shelter, which then conveyed the acreage to Development.[3] We, as well as the parties, treat Shelter and Development, for purposes of this appeal, as one party, which we will refer to as "Consolidated."

---

[1]Plaintiffs are Consolidated Shelter, Inc., an Oregon corporation ("Shelter"), and Consolidated Development, Ltd., an Oregon limited partnership ("Development") in which Shelter is the general partner.

[2] The jury returned a verdict for defendant on the fraud claim.

[3] Neither party argues that Luton was not an investor in Shelter or Development or that his transfer to Shelter occurred after the 18-month period.

In November 1980 Consolidated sold the acreage in two parcels to Otter Rock Development, Inc. ("Otter Rock"), by separate real estate contracts. After making substantial down payments, Otter Rock gave two notes to Consolidated for the balances of $450,000 and $221,000, which were secured, respectively, by mortgages on the separate parcels. In one contract, Consolidated warranted to Otter Rock:

"Seller warrants and gives to Purchaser each and every warranty given to Seller by its predecessor in title, Far West Federal Saving & Loan Association [defendant], as if same were more fully set forth in writing herein, and without limiting the foregoing, Seller warrants that:

"1. *Adjacent sewer [sic] and water plants have adequate capacity to serve the 100 single family home sites sold hereunder;* and

"2. Geological conditions will allow the development on the real property sold hereunder of not less than 100 single family residential sites." (Emphasis supplied.)

The other contract provided:

"Seller warrants and gives to Purchaser each and every warranty given to Seller by its predecessor in title, Far West Federal Saving & Loan Association [defendant], as if same were more fully set forth in writing herein, and without limiting the foregoing, Seller warrants that:

"1. All necessary zoning have [sic] been obtained to allow the subject real property to be developed with 150 single family residential sites;

"2. Electricity and water is available to the real property sold hereunder;

"3. *Adjacent sewer [sic] and water plants have adequate capacity to serve the 150 single family home sites sold hereunder;* and

"4. Geological conditions will allow the development on the real property sold hereunder of not less than 104 single family residential sites." (Emphasis supplied.)

Each mortgage contained identical warranties from Consolidated to Otter Rock and also provided that Consolidated would subordinate its liens to the lien of a deed of trust to secure indebtedness necessary to finance the development of the acreage. Otter Rock then borrowed several million dollars

from defendant, secured by a trust deed on the acreage, and subordinated its liens to defendant's development loan.

Shortly after Otter Rock acquired the acreage in December 1980, it and Consolidated learned that the plant either had no additional capacity or capacity for only 10 to 50 additional units. Otter Rock could not sell the acreage lots without available sewer connections. Because of the lack of capacity of the plant, county approval of Otter Rock's development plan was delayed, and Otter Rock depleted its funds to make substantial modifications in the plant. As a result, Otter Rock was unable to make its payments to defendant, which foreclosed its deed of trust on the acreage and extinguished Consolidated's security interest. Subsequently, Otter Rock went into bankruptcy.

On the issue of damages, the jury could also find from the evidence that (1) defendant breached the warranty regarding plant capacity; (2) the breach caused Otter Rock to fail and its notes to Consolidated to become worthless; (3) defendant knew when it gave the warranty to Luton respecting the capacity of the plant that he and his related successors would probably convey the acreage to a third party for development and that the warranty of capacity was essential to the third party's success; (4) Consolidated's damages in the event of breach were reasonably foreseeable and within the contemplation of the parties at the time when defendant sold the acreage; and (5) the damages were $806,000.[4]

Defendant told the court:

"I would then ask for a directed verdict on the breach of warranty first claim, Consolidated Shelter's for a variety of reasons.

"* * * * *

"But our warranties, if they have been assigned to Otter Rock, are extinguished as they relate to the plaintiffs in this case. If anybody has a claim, it's Otter Rock's claim on the basis of the assignment of those warranties. It is not these plaintiffs' claim."

Defendant argues that the court should have granted its

---

[4] The amount of $806,000 represents the face value of the notes plus accrued interest.

motion, because Consolidated assigned the warranty to Otter Rock and was, therefore, not the real party in interest. Defendant does not argue that the documents are ambiguous, but it asks that the court interpret them as a matter of law.

The court did not err. Consolidated did not assign the warranty of capacity to Otter Rock. It gave Otter Rock the same warranty of capacity that defendant gave it. That is the plain meaning of the contracts and mortgages between Consolidated and Otter Rock. This action is based on the warranty from defendant that Consolidated retained.

■    Defendant also assigns as error that the court denied its motion at the close of the evidence

"to strike paragraph 6 of the complaint,[5] which relates to the $450,000 and $250,000 in notes.

"* * * * *

"The * * * point is to strike the whole thing because there is not sufficiency of damage. The evidence that we have heard is that there are two remaining notes, period. As a collateral matter on that, we heard that the security interest in relation to those notes has been extinguished by trustee foreclosure. But the notes are still unsatisfied. There was no evidence of demand ever made on the notes."

In ruling on the motion, the court stated that "there is some evidence in the case to indicate that the promissory notes cannot be paid." The jury could find that the notes were worthless and, assuming that a demand for payment was necessary, that a demand by Consolidated to Otter Rock for payment of the notes would have been futile.

In support of the same assignment of error, defendant also argues here that Consolidated did not introduce sufficient evidence to prove that (1) it was damaged, (2) there was a causal connection existed between the breach and the damages, and (3) the damages were within the contemplation

---

[5] Paragraph 6 of the complaint provided:

"Otter Rock Development Company's purchase of Otter Woods and Otter Village [the acreage] from plaintiff Consolidated Development, Ltd., was on two contracts to be paid as the property was developed and sold. Approximately $450,000 of the purchase price remains due and owing to plaintiff Consolidated Development on the Otter Woods contract; approximately $221,000 is due and owing on the Otter Village Contract."

of the parties. Defendant also argues that the court did not properly instruct the jury on the measure of damages. Consolidated correctly responds that defendant failed to raise these matters at trial. Furthermore, defendant makes no assignment of error regarding instructions to the jury. Moreover, even if we assume that defendant's motion to strike "the whole thing because there is not sufficiency of damage" encompasses the arguments that it makes here about damages and causality, we have already stated that the jury could find that Consolidated was damaged, that defendant's breach caused the damages and that the damages were within the contemplation of the parties.

Affirmed.